GARRISON, Judge.
This is an appeal from a determination of the City Civil Service Commission of the City of New Orleans, affirming the dismissal of Ronald Paul Ulfers, Sr. from the New Orleans Police Department. From that determination, which we reverse, Ronald Ul-fers appeals.
The determination of the Commission finds Ulfers in violation of Articles 26, 27 and 52 of the “Rules for the Administration of the Department of Police,” which read as follows:
“ARTICLE 26. PERSONAL CONDUCT
“The conduct of each member of the Department, both on duty and off duty, shall be such that it will not cause adverse public criticism of the Department or any of its members. Further, the proper conduct of each member of the Department shall be governed by what is acceptable to a reasonable and prudent person.
“ARTICLE 27. ADHERENCE TO LAW
“A member shall act in accord with the constitutions, statutes, ordinances, administrative regulations, and the official interpretations thereof, of the United States, the State of Louisiana, and the City of New Orleans, but when in another jurisdiction shall obey applicable law. Ignorance of the law or its interpretations shall not be regarded as valid defense as against the requirements of this Article.
“ARTICLE 52. INSTRUCTIONS FROM AUTHORITATIVE SOURCE “a. A member shall promptly and fully abide by or execute instructions issuing from any authoritative source.
“b. If the instructions are reasonably believed to conflict with these Rules or other instructions, this fact shall respectfully be made known to the issuing authority. If the issuing authority elects to insist upon the execution of the instructions, then only he shall be held responsible should such conflict materialize.”
Ulfers was further charged with violation of Rule IX, Section 1 of the “Rules of the Civil Service Commission of the City of New Orleans”, which reads as follows:
“1.1 When any regular employee in the classified service is unable or unwilling to perform the duties of his position in a satisfactory manner or has committed any act to the prejudice of the service, or has omitted to perform any act that it was his duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may extend to: (1) removal from the service, (2) retirement, (3) reduction in pay to the next lower rate in the range for the class, (4) demotion to any position of a lower class that the employee is deemed by the appointing authority and the Director to be competent to fill, (5) suspension without pay not exceeding in the aggregate one hundred twenty (120) days in any period of twelve (12) consecutive calendar months, (6) fine, (7) reprimand, or other less drastic measure of discipline which the appointing authority considers proper.”
On October 7, 1979, Kathy Spann Ulfers, the wife of Ronald Ulfers, was murdered as she entered the family home. Homicide detectives Martin Venezia and Sam Gebbia were assigned to the investigation. In conjunction therewith Superintendent Parsons instructed Venezia and Gebbia to include *33 Ulfers as a suspect. For a number of years, Ulfers had been purchasing, restoring and reselling old and wrecked cars. On October 7, when Venezia and Gebbia were investigating the crime scene, they noticed numerous auto parts on the premises. Sometime thereafter, according to the officers, Parsons instructed Gebbia and Venezia to get a warrant for stolen auto parts in order to put “pressure” on Ulfers. As a result, a number of parts were seized.
Ulfers testified that he had purchased the auto parts from a man who approached him at a local service station where Ulfer’s Mercedes was garaged. The station owner, Philip Barber, testified that the man asked him who owned the wrecked Mercedes and whether or not the owner would be interested in selling it. Barber testified that he directed the man to Ulfers but did not participate in the rest of the conversation. Ulfers testified that the man offered to buy the Mercedes and when Ulfers refused, the man then offered to sell Mercedes parts to Ulfers. Arrangements were made to bring the parts to Ulfers’ house.
When the seller arrived, Kenneth Joseph Watson, Ulfers’ gardener, testified that Ul-fers wrote down all the numbers on the auto parts and said that he was going to check the numbers on the police computer to see if they were stolen. Watson testified that he helped Ulfers look for the identification numbers. Ulfers testified that he checked the numbers on the police computer and none appeared stolen, so he returned to his home and purchased the parts. Detective Gebbia testified that after the warrant was served, he checked the numbers on the police computer and the parts were not listed as stolen. The parts were in fact stolen, but did not appear on the computer for some time. The warrant was later quashed as invalid and Ulfers was not convicted on the charge of receiving stolen property. Sometime thereafter, the assailant of Kathy Spann Ulfers was apprehended and confessed to the murder.
Both Homicide Detective Gebbia and Detective Venezia testified that there was no evidence implicating Ulfers in his wife’s murder and that the warrant was a “calculated ploy.”
The issue before us is whether a police officer can be dismissed because he was charged with a crime for the commission of which he was not convicted, where the charge was a “calculated ploy” in order to place pressure on the officer in conjunction with an ongoing investigation unrelated to the charge at issue.
The Department of Police argues that Ulfers should have known that the parts were stolen. We disagree. We find that Ulfers took reasonable precautions and was justified in his reliance on the computer information. We find that Ulfers’ conduct was reasonable and prudent in light of the circumstances and as such cannot be grounds for dismissal under Article 26. Likewise, we find no failure of Ronald Ul-fers to adhere to law under Article 27. In fact, the “official interpretations thereof” have resulted in the lack of a conviction against him and the rise of a presumption of innocence. We fail to see what Article 52 has to do with this case. Ronald Ulfers cooperated with the homicide detectives and has not failed to obey an order from an authoritative source. Lastly, in examining Rule IX, Section 1 of the Rules of the City Civil Service Commission, the only section which we find may have any applicability, is the proviso which states “has committed any act to the prejudice of the service.” We find that Ulfers has not committed any act prejudicing the service. The situation is one created by the Department in furtherance of its own ends and Ulfers has not prejudiced the service by hindering or compromising the Department in the effectiveness of its operations. If anyone has been prejudiced, it is Ronald Ulfers.
We find, as John Dupre, the Assistant Commander of the Internal Affairs Division testified, that the warrant at issue was a “ploy” and that Ronald Ulfers was caught in “the chain of events.”
For the reasons discussed, the determination below is reversed and we render judgment as follows:
*34 IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff Ronald Paul Ulfers and against the Department of the Police of the City of New Orleans, granting to plaintiff reinstatement to his position when he was discharged with full back pay, sick leave and all other emoluments of office as of November 27, 1979, legal interest from the date of suspension until paid and all costs of these proceedings.
REVERSED AND RENDERED.